# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

**DONALD L. EVANS,**

      **Petitioner,**

**v.**                         **Case No.  5:12cv97/MP/CJK**

**MICHAEL D. CREWS,[1]**

      **Respondent.**

_____/

# ORDER and
# REPORT AND RECOMMENDATION

      Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 15).  Petitioner has not replied, although invited to do so.  (*See* Doc. 17).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District

---

[1]Michael D. Crews succeeded Edwin G. Buss and Kenneth S. Tucker as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent.  Fed.R.Civ.P. 25(d).

Courts. The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

Petitioner was charged by Amended Information filed in the Circuit Court for Bay County, Florida, Case No. 09-CF-2149, with Trafficking in Methamphetamine - 28 grams to 200 grams (Count I) and Possession of Drug Paraphernalia (Count II). (Doc. 15, Ex. B).[2] The original Information, filed on August 25, 2009, had charged petitioner in Count I with trafficking in an amount of methamphetamine exceeding 200 grams, and in Count II with possession of the same items of drug paraphernalia. (Ex. B). On March 31, 2010, petitioner entered a counseled no contest plea to each count as charged, pursuant to a negotiated plea agreement memorialized in writing. (Exs. C, D). Petitioner's no contest pleas were in exchange for the State recommending a sentence of 89.9 months imprisonment with a 7-calendar-year mandatory minimum on the trafficking count, and a sentence of time served on the possession of paraphernalia count, with the sentences to run concurrent with each other and with the sentences imposed in an unrelated criminal case (Bay County circuit court Case No. 09-CF-1970). (Exs. C, D). The statutory maximum sentence for the trafficking offense was 30 years in prison with a 7-year mandatory minimum. (Ex. C; *see also* Fla. Stat. § 893.135(1)(f)1.b. and (5); Fla. Stat. § 775.082). On March 31, 2010, the trial court accepted petitioner's pleas after conducting an extensive plea colloquy and determining the pleas were knowing and voluntary; adjudicated petitioner guilty of both offenses as charged; and sentenced petitioner

---

[2]All references to exhibits are to those provided at Doc. 15, unless otherwise noted.

consistent with the terms of the plea agreement. (Ex. D). Judgment was rendered March 31, 2010. (Ex. E). Petitioner did not appeal.

On October 7, 2010, petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Ex. F). The state court struck the motion as facially insufficient with leave to amend. (Ex. G). Petitioner filed an amended Rule 3.850 motion on January 7, 2011, raising four grounds of ineffective assistance of trial counsel. (Ex. H). In an order issued February 17, 2011, the circuit court summarily denied relief on Grounds Two, Three and Four, and ordered the State to respond to Ground One. (Ex. I). After response from the State (Ex. J), and petitioner's reply (Ex. K), the circuit court summarily denied petitioner's motion in its entirety. (Ex. L). The Florida First District Court of Appeal ("First DCA") per curiam affirmed without a written opinion, *Evans v. State*, 72 So. 3d 750 (Fla. 1st DCA 2011) (Table) (copy at Ex. N), with the mandate issuing November 9, 2011. (Ex. N).

Petitioner filed his federal habeas petition in this court on March 29, 2012. (Doc. 1, p. 11). The petition presents four grounds for relief, all challenging trial counsel's effectiveness.

Respondent argues that petitioner cannot challenge his conviction of possession of drug paraphernalia (Count II), because petitioner's sentence (time served) on that charge expired prior to petitioner's filing his federal habeas petition and, accordingly, that conviction is conclusively valid and closed to collateral attack through federal habeas. (Doc. 15, pp. 4-5). Respondent argues that petitioner is not entitled to federal habeas relief from his trafficking conviction (Count I), because petitioner's claims of ineffective assistance of counsel are procedurally defaulted,

waived by virtue of petitioner's no contest pleas, and without merit. (*Id*., pp. 11-46).

## LEGAL STANDARDS

<u>Exhaustion and Procedural Default</u>

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1),[3] thereby giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78. A claim that was not presented to the state court and which can no longer be litigated under state procedural rules is considered

---

[3]Section 2254 provides, in pertinent part:

(b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

    (A)  the applicant has exhausted the remedies available in the courts of the State; or

    (B) (i)  there is an absence of available State corrective process; or

      (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

procedurally defaulted, *i.e.*, procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S. Ct. 1728; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts). A claim is also considered procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303. In the second instance, the federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. *Ford v.*

*Georgia*, 498 U.S. 411, 424-25, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice. *Tower*, 7 F.3d at 210. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*.

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

(d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4]  The appropriate test was described by Justice O'Connor as follows:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

---

[4]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *Thaler v. Haynes*, 559U.S. 43, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr*., 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)]  does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  If the state court decision <u>is</u> contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied"

the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision. *See*

*Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts). In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear

and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. 930, 954, 127 S. Ct. 2842. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

DISCUSSION

Ground One        "Trial counsel was ineffective when (s)he failed to file a motion
                  to suppress all evidence found in the shed at 12101 Happyville
                  Road, Youngstown, Florida.  The evidence was the result of an
                  illegal search and any evidence found during an illegal search is
                  deemed to be subject to the "Fruit of the Poisonous Tree"
                  doctrine."  (Doc. 1, p. 4).

        Petitioner claims trial counsel was ineffective for failing to move to suppress

the evidence in his case – evidence found in a shed on the premises of a residence he

occupied (12101 Happyville Road) with his girlfriend Terra Sturgill.  Petitioner

argues that the search was illegal, because the warrant authorizing the search was

based on information obtained from a DCF worker's "illegal" search of the residence.

Petitioner says the search was "illegal" because it was conducted over his objection

and only after Ms. Sturgill was coerced into consenting to the search.  (Doc. 1, p. 4).

        Respondent concedes that petitioner presented this claim to the state courts as

"Ground 1" of his amended Rule 3.850 motion and that the state court adjudicated the

claim on the merits (doc. 15, pp. 11, 17), but argues that petitioner is  not entitled to

federal habeas relief because the state court correctly identified and reasonably

applied the *Strickland* standard in rejecting the claim.  (*Id.*, pp. 17- 23).

        A.        Clearly Established Federal Law

        In determining the validity of a plea to a criminal charge, a plea of nolo

contendere stands on equal footing with a guilty plea.  *North Carolina v. Alford*, 400

U.S. 25, 35-36, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *Hudson v. United States*, 272

U.S. 451, 47 S. Ct. 127, 129, 71 L. Ed. 347 (1926); *see also Florida v. Royer*, 460

U.S. 491, 495 n.5, 103 S. Ct. 1319, 1323 n.5, 75 L. Ed. 2d 229 (1983) (recognizing

that "[u]nder Florida law, a plea of *nolo contendere* is equivalent to a plea of

guilty."). "A guilty plea is an admission of criminal conduct as well as the waiver of the right to trial." *Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir. 1995) (citing *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469, 25 L. Ed. 2d 747 (1970)). "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady* at 748. Accordingly, in the context of a guilty plea the standard for determining the validity of the plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." *North Carolina v. Alford*, 400 U.S. at 31, 91 S. Ct. 160; *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). The assistance of counsel received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and understanding. *See McMann v. Richardson*, 397 U.S. 759, 770-71, 90 S. Ct. 1441, 1448-49, 25 L. Ed. 2d 763 (1970).

Once a guilty plea has been entered by a criminal defendant, all non-jurisdictional defects in the proceedings prior to the plea are waived, including all claims of ineffective assistance of counsel "except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000). As the Supreme Court summarized:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in

*McMann*.

*Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973) (*referencing McMann v. Richardson, supra*); *see also Lefkowitz v. Newsome*, 420 U.S. 283, 288, 95 S. Ct. 886, 43 L. Ed. 2d 196 (1975) ("[T]he general rule is that a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings.").

When a petitioner challenges the voluntariness of his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); *see also Premo v. Moore*, — U.S. —, 131 S. Ct. 733, 737-38, 178 L. Ed. 2d 649 (2011) (identifying *Strickland* as the clearly established federal law governing a habeas petitioner's challenge to his conviction obtained through a plea bargain). To obtain relief under *Strickland*, a petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

In a plea situation, the focus of *Strickland*'s performance prong is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56-57 *(quoting McMann v. Richardson*, 397 U.S. at 771, 90 S. Ct. 1441). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland* at 689.

Representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused regarding the plea. *Stano v. Dugger*, 921 F.2d 1125, 1150-51 (11th Cir. 1991) (*citing McMann*, 397 U.S. at 774; *Tollett*, 411 U.S. at 267, *Hill*, 474 U.S. at 56).

To meet *Strickland*'s prejudice prong in a plea situation, petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. "It is not enough for [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Id.*, 474 U.S. at 58-59.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the

> question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted).

### B.  Petitioner's Valid Guilty Plea Forecloses Federal Habeas Review

In presenting the facts supporting Ground One, petitioner makes no attempt to connect the lack of a motion to suppress to counsel's plea advice or to petitioner's ability to make an informed and conscious choice between accepting the prosecution's offer and going to trial. Petitioner asserts in Ground Four, which appears to be, in part, a "cumulative error" type claim, that "counsel was unaware of and failed to explore all possible, and probable defenses with the defendant prior to plea", and that "had counsel not been ineffective, there is a reasonable probability that he would not have entered a plea to a crime he did not commit but would have proceeded straight to trial." (Doc. 1, p. 10). This conclusory assertion, without any supporting allegations suggesting that counsel's failure to file a motion to suppress affected petitioner's ability to enter a knowing and voluntary plea, does not implicate the validity of petitioner's plea or provide a basis for federal habeas relief. Petitioner's supporting facts demonstrate that petitioner was well aware, at the time he entered his plea, of the facts surrounding the investigators' search and seizure, and the record of petitioner's plea proceeding demonstrates that petitioner's pleas were knowing and voluntary. In signing his written plea agreement, petitioner attested that: (1) the plea was in his best interest, (2) he had been advised of the nature of the charges and had sufficient time to discuss them with his attorney, (3) he was satisfied with the services and advice of his attorney, (4) he was aware of the constitutional rights he was waiving by entering his plea – including the right to plead not guilty,

the right to be tried by a jury, the right to compel the attendance of witnesses on his behalf, the right to confront and cross-examine witnesses against him, and the right to remain silent –  and that he was knowingly giving up those rights, (5) he was entering his plea freely and of his own free will and accord, (6) he was in full command of his normal faculties and was not under the influence of any sedatives, drugs, narcotics, or intoxicating beverages which would render him incapable of knowingly, intelligently or voluntarily entering his plea, (7) he was not suffering from any mental illness, (8) he had a clear understanding of the plea proceeding, and (9) the State could prove a prima facie case of the charges against him.  (Ex. C). In addition, petitioner swore under oath in open court at his plea proceeding that he wished to enter no contest pleas to the trafficking and possession of drug paraphernalia charges; that the signature on the written plea agreement was his; that he had the opportunity to go over the agreement with his attorney and understood everything it said; that he did not have any questions about the matters addressed on the plea agreement; that he understood that by entering his plea he was giving up the right to a trial by jury, the right to confront the witnesses against him, and the right to require the State to prove to a jury that petitioner did, in fact, engage in the conduct constituting the crimes for which he was charged and was pleading no contest; that other than the agreement as to sentence, no one forced, threatened or promised him anything in order to get him to enter his plea; that he understood the sentence he would receive; that he did not have any questions about what he was doing; that he understood what he was doing; that he was not under the influence of any medication or other substance that could impact or interfere with his ability to understand what was going on; that he had no questions whatsoever; that pleading no contest to the

charges was what he wanted to do. (Ex. D).

Because the constitutional defect petitioner alleges in Ground One preceded the entry of petitioner's valid guilty plea, and because petitioner's allegations do not undermine the intelligent and voluntary character of petitioner's plea, federal habeas review of Ground One is foreclosed. *See Tollett*, 411 U.S. at 266-67.

C.     Petitioner's Claim Fails Even if Reviewed under Section 2254

Notwithstanding the above analysis, petitioner's claim fails on the merits. Petitioner's allegations supporting this claim are identical to those he presented to the state court. (Ex. H, pp. 31-32). The state postconviction court summarized petitioner's claim as follows:

> In Ground One, the Defendant alleges that counsel was ineffective for failing to file a motion to suppress the evidence in his case. According to the Defendant, an investigator from the Department of Children and Families came to his girlftriend's residence based on an anonymous tip. DCF investigator Karen Nusbaum, along with sheriff's investigators, made contact with the defendant and requested to search the premises. He allegedly refused the investigators' request. The Defendant's girlfriend, Terra Sturgill, approached the DCF investigator and informed her that her son was not present and that she had no reason to search the premises. The Defendant alleges that Investigator Nusbaum then threateed to remove the child from her home if she did not consent to a search. Ms. Sturgill thereafter consented, and a search was conducted notwithstanding the Defendant's continued objection. The Defendant argues that, based on this "illegal search," the Sheriff's investigators were notified that a methamphetamine lab was present on the property, and this information provided probable cause for their search warrant for the premises. The Defendnat argues that the Sheriff's investigators would have lacked probable cause to apply for a warrant without the initial "illegal" search.

(Ex. L, p. 176). The state court denied relief without an evidentiary hearing in a written order discussing the two-pronged test for ineffective assistance of counsel

claims articulated in *Strickland v. Washington*, and explaining why petitioner's allegations failed to meet that standard, as follows:

> The record shows that defense counsel would not have had a valid basis for filing a motion to suppress in this case. According to the deposition testimony of Investigator Karen Nusbaum, DCF received an anonymous tip through their hotline that methamphetamine was being manufactured in a shed located next to Terra Sturgill's residence. Ms. Nusbaum testified that she had not been to the residence prior to her trip with investigators from the Sheriff's office. (Inv. Nusbaum Dep. at 2.) On July 13, 2009, she met Investigators Schell and Chavers on Highway 231, and they arrived together at Ms. Sturgill's residence. When they arrived, the Defendant met the investigators out front, and Ms. Sturgill joined them shortly thereafter. Investigator Nusbaum took Ms. Sturgill inside to read her the allegations, and the other officers join[ed] her and requested to search the shed. (Dep. at 3.) Ms. Sturgill initially refused to consent to a search by Investigator Schell and Chavers, but said that Investigator Nusbaum could go inside the shed to conduct a search. (Dep. at 4.) She found a microwave, plastic tubing, coffee filters, a coke bottle, and a large box that appeared to contain a fan or air conditioner. However, it did not appear to her that anyone was residing inside the shed, as it was extremely crowded. (Dep. at 4, 12.) After the search, she informed the other investigators of her observations, and they obtained a search warrant based on this and other information.

> Investigator Schell testified that the Defendant was very nervous and appeared to be under the influence of some type of amphetamine when they arrived. (Inv. Schell Dep. at 3-4.) He stated that the Defendant immediately stated that he needed to go to the shed after the investigators went inside the residence. (Dep. at 5-6.) Investigator Schell followed the Defendant outside to the shed, and when the Defendant did not go inside, Investigator Schell requested permission to search. The Defendant informed the investigator that there was nothing inside except some clothes and his personal toys, but he never expressly refused. (Dep. at 6-7.) Thereafter, Investigator Chavers brought attention to the open garbage can, where there were Coleman fuel canisters in plain sight. The investigators asked to search the

garbage, and the Defendant consented. In addition to the Coleman fuel cans, they found an empty box of pseudoephedrine. (Dep. at 7-8.) After receiving information from Investigator Nusbaum regarding the inside of the shed, Officer Schell informed Ms. Sturgill and the Defendant that he was documenting this information and applying for a search warrant. (Dep. at 9.) Following a search, the investigators found PH strips, a container of lye, a Pyrex dish, an Ocean Spray bottle containing shake and bake, a Mountain Dew bottle containing methamphetamine, the Defendant's business cards and his bank card. (Dep. at 12-15)

Based on the above testimony, the Defendant's assertion that he refused to consent to the search is rebutted by the record. According to Investigator Schell, the Defendant "said there's nothing in there except some personal sex toys, he didn't refuse, but it was kind of evasive." (Inv. Schell Dep. at 7.) Investigator Chavers also testified that the Defendant said that they would have to get consent from his girlfriend, Ms. St[ur]gill, as it was her shed. (Inv. Chavers Dep. at 2.) As the Defendant never expressly objected to the search, and Ms. Sturgill gave permission to search the shed, the initial search by Investigator Nusbaum was not illegal. *See State v. Clavette*, 969 So. 2d 463, 465 (Fla. 5th DCA 2007) ("only the *express* refusal of consent is sufficient to overcome the consent given to the police by another resident . . . and not one gleaned by implication or inference."); *see also State v. Purifoy*, 740 So. 2d 29 (Fla. 1st DCA 1999) (police were not obligated to seek consent of the defendant, when co-tenant had authority to consent to the search).

Although the record does not support the Defendant's contention that Ms. Sturgill was coerced into giving consent, assuming *arguendo* that this is true, the Sheriff's investigators still would have had probable cause to obtain a search warrant without Investigator Nusbaum's findings in the shed. Investigator Schell received information from DCF regarding the manufacturing of meth on the premises. Both Investigator Schell and Chavers saw Coleman fuel cans in plain sight on the premises, and the box of pseudoephedrine was also found inside the garbage can. (Schell Dep. at 7-8.) Additionally, a clear white tube was sticking up outside of the shed (Chavers Dep. at 6), and a fan was

mounted on the outside (Schell Dep. at 8-9), which the investigator believed was used to ventilate some of the meth odors or gases (Schell Dep. at 20-21). As detailed by the probable cause affidavit, Investigator Schell has worked in law enforcement for over ten years and has been involved in over 250 investigations involving methamphetamine labs as well as other controlled substances. (*See* Search Warrant.) Based on his training and experience, Investigator Schell knew that Coleman fuel and pseudoephedrine were both used in the manufacturing of methamphetamine and that persons who manufacture meth often use fans to ventilate the dangerous fumes that are produced during the process. Considering the totality of these observations, the Sheriff's investigators would have had probable cause to obtain a search warrant for the shed, even without the information obtained from Investigator Nusbaum's alleged "illegal" entry into the shed. *See State v. Pereira*, 967 So. 2d 312 (Fla. 3d DCA 2007) (police had probable cause to obtain a search warrant, after police corroborated an anonymous tip that drug activity was occurring on the premises).

It is also noteworthy that the defendant never alleged in Ground One that he would not have pled, had counsel filed a motion to suppress, although he made this statement in Ground Four of his motion. In any case, as stated above, counsel did not have a basis for filing a motion to suppress, so any such motion would have been denied. Thus, his attorney was not ineffective for failing to raise a meritless claim. *See Barnhill v. State*, 971 So. 2d 106 (Fla. 2007). Additionally, considering that the Defendant was facing thirty (30) years of imprisonment for a first degree felony and the State offered the lowest permissible sentence, the Defendant still most likely would have pled to the charges. Thus, he has not established sufficient prejudice under *Strickland*. *See Grosvenor*, 874 So. 2d at 1179.

Finally, although the Fifth District has held that a defendant may raise this particular ineffective assistance claim even after he enters a plea to the charges, the First District has recently held that when a defendant enters a plea to the charges, he may not later attack his attorney's failure to file pretrial motions or defend the charges. *See Clift v. State*, 43 So. 3d 778 (Fla. 1st DCA 2010) ("By entering a plea to the

charges, Appellant waived his right to have counsel investigate or put forward a defense, including filing motions to suppress."); *but c.f. MacKinnon v. State*, 39 So. 3d 537 (Fla. 5th DCA 2010) (counsel's failure to file a motion to suppress, which resulted in an ill-advised guilty plea, was a facially insufficient post conviction claim). Accordingly, Ground One is denied.

(Ex. L, pp. 176-78). The postconviction court attached to its order the Affidavit/Complaint on which petitioner's charges were based, the written plea agreement, petitioner's Criminal Punishment Code scoresheet, the transcript of petitioner's plea and sentencing proceeding, the judgment and sentence, the transcript of Investigator Nusbaum's deposition, the transcript of Investigator Schell's deposition, the transcript of Investigator Chavers' deposition, and the search warrant. (*Id.*, pp. 179-252). The First DCA summarily affirmed. (Ex. N).

The state court's rejection of petitioner's claim was not "contrary to" clearly established federal law, because the state court applied the two-pronged standard identified by the Supreme Court in *Strickland*, 466 U.S. 668 (1984). There is no Supreme Court case with materially indistinguishable facts dictating a different outcome than that reached by the state court.

The state court's rejection of petitioner's claim was not based on an unreasonable application of *Strickland* or on an unreasonable determination of the facts. The undersigned has carefully reviewed the state court record, including the attachments to the circuit court's order. The state court's factual findings are amply supported by the record and are presumed correct. Petitioner has not rebutted those findings with clear and convincing evidence to the contrary. Based on the state court's findings, it was not unreasonable for the court to conclude that, even liberally construing petitioner's allegations as making the requisite allegation that counsel's

conduct affected the plea process, petitioner cannot establish counsel was ineffective, because the record demonstrates a suppression motion on petitioner's proffered basis would not have succeeded. *See Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S. Ct. 2574, 2582-83, 91 L. Ed. 2d 305 (1986) (holding that for a defendant to prevail on an ineffective assistance claim where counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must establish deficient performance and prejudice under *Strickland*, and "must also prove that his Fourth Amendment claim is meritorious. . . ." (*citing Strickland*, 466 U.S. at 688, 694, 104 S. Ct. at 2064, 2068)); *see also Freeman v. Attorney Gen., Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (concluding that counsel was not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore*, 240 F.3d 907 (11th Cir. 2001) (concluding that counsel was not ineffective for failing to raise a non-meritorious objection); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (stating that counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

The state courts' rejection of petitioner's claim was neither contrary to, nor an unreasonable application of *Strickland*, nor was the ruling based on an unreasonable determination of the facts in light of the record before the state court. Petitioner is not entitled to federal habeas relief on Ground One.

**Ground Two**    "Counsel was ineffective for failing to file a motion to dismiss or quash the information for the charge of "trafficking in methamphetamine over 28 grams," where the state did not possess evidence supporting a prima facie case to proceed to trial, thus violating the defendant's fourth, fifth, sixth and 14th amendment rights."  (Doc. 1, p. 6).

Petitioner faults trial counsel for failing to move to dismiss the information on the grounds that the material facts of the case were undisputed and, based on those facts, the State could not establish an essential element of the trafficking charge – that petitioner was in actual or constructive possession of the methamphetamine.  (Doc. 1, pp. 6-7).  Petitioner alleges in support of this claim that the following "facts" were "undisputed": (1) petitioner did not have exclusive control over the shed; (2) petitioner's mother was known to frequent the shed to escape an abusive drug relationship with her boyfriend; (3) petitioner did not have control over the shed when the alleged crime occurred – his mother did; (4) while petitioner and Ms. Sturgill were talking to the investigators, a "white female [apparently petitioner's mother] was observed leaving the shed . . . with two duffle bags and get into a brown custom van and drive away"; (5) the fingerprints on a Pyrex plate did not belong to petitioner, but matched his mother's fingerprints; (6) petitioner was neither in actual or constructive possession of any contraband; and (7) a reasonable defense could have been made that Carla Hight (the "white female"/petitioner's mother), while in possession of the shed and while manufacturing methamphetamine, became aware of law enforcement, packed up what she could, exited the shed in plain view and abandoned the shed. (Doc. 1, p. 6).  Petitioner asserts that had counsel asserted these facts in a motion to dismiss the information, "the court would have had the opportunity to rule."  (*Id*., p. 6).

Respondent concedes that petitioner presented this claim as "Ground 2" of his amended Rule 3.850 motion (doc. 15, p. 23), but argues that petitioner is not entitled to federal habeas relief because the state court rejected petitioner's claim on the independent and adequate state procedural ground that it was a challenge to the sufficiency of the evidence and, in Florida, attacks on the sufficiency of the evidence are not cognizable through collateral attack and are procedurally barred from review in Rule 3.850 proceedings (*id.*, p. 24). Respondent argues that the state court's imposition of a procedural bar renders petitioner's claim procedurally defaulted for purposes of federal habeas. Respondent argues in the alternative that petitioner's valid guilty plea forecloses federal collateral review of Ground Two because petitioner waived this and other nonjurisdictional challenges to the constitutionality of his plea. (*Id.*, pp. 27-28). Respondent argues in the alternative that even considering petitioner's claim on the merits, petitioner is entitled to no relief. (*Id.*, pp. 28-33).

The state court addressed petitioner's claim as follows:

> In Ground Two, the Defendant alleges that trial counsel was ineffective for failing to file a motion to dismiss the case, since the State could not prove a prima facie case of drug trafficking. The Defendant argues that he was never in "actual or constructive possession" of the drugs, which is one of the elements of trafficking. He states that he was not inside the shed where the drugs were found, and instead argues that his mother was in possession of the shed at the time of the offense. The Defendant appears to be attacking the sufficiency of evidence on which the State relied in bringing the charges, which is not cognizable in a Rule 3.850 motion. *See Smith v. State*, 41 So. 3d 1037, 1040 (Fla. 1st DCA 2010). The issue of constructive possession is a question of fact properly submitted to a jury for deliberation. *See Maisler v. State*, 425 So. 2d 107 (Fla. 1st DCA 1982); *see also Duncan v. State*, 986 So. 2d 653 (Fla. 4th DCA 2008). As the Defendant waived his right to a jury

trial when he pled no contest to the charges, the Defendant cannot now attack the sufficiency of evidence. *See Clift v. State*, 43 So. 3d 778 (Fla. 1st DCA 2010). Thus, Ground Two is without merit.

(Ex. I, p. 43).

The court need not reach the procedural default issue, because petitioner's claim provides no basis for federal habeas relief.

A.     Petitioner's Valid Guilty Plea Forecloses Federal Habeas Review

As with Ground One above, petitioner makes no attempt to connect counsel's failure to move to dismiss the information with counsel's plea advice or with the knowing and voluntary character of petitioner's guilty plea (petitioner's ability to make an informed and conscious choice between accepting the prosecution's offer and going to trial). Because the constitutional defect petitioner alleges in Ground Two preceded the entry of petitioner's valid guilty plea, and because petitioner's allegations do not undermine the intelligent and voluntary character of that plea, federal habeas review of Ground Two is foreclosed. *See Tollett*, 411 U.S. at 266-67.

Additionally, the record demonstrates that petitioner expressly conceded in his written plea agreement that "the State of Florida can prove a prima facie case", and that petitioner was satisfied with the services and advice of his attorney. (Ex. C). Petitioner confirmed, at his plea colloquy, that he understood the statements he made in his plea agreement and that he personally signed the agreement. (Ex. D). Petitioner went on to acknowledge during his plea colloquy that he understood that by entering his plea, he was waiving the right to challenge the sufficiency of the State's case:

> THE COURT: Do you understand, by entering a plea, you're giving up your right to a trial by jury; giving up your right to confront the witnesses against you; giving up your right to require the State to prove

to a jury, that on or about July the 13th, 2009, you did, in fact, sell, manufacture, deliver or purchase or bring into the State of Florida and, or in actual or constructive possession of 28 grams or more of amphetamine or methamphetamine or a mixture thereof, as alleged in Count I of the charges against you; and, as to count II, that on the same date, you did, in fact, possess paraphernalia, consisting of coffee filters, funnels, metal strainer, plastic tubing, designed or used in the manufacture, preparing or cultivating, growing a controlled substance as alleged in Count II; is that correct?

(Ex. D, pp. 4-5). Petitioner responded "Yes, sir." (*Id*., p. 5). Petitioner cannot now go behind his own sworn testimony at the plea hearing and his valid waiver of a trial, and challenge his judgment of conviction on the ground that "the State lacked a prima facie case" and that trial counsel "failed to test the state's case." (Doc. 1, p. 7). As the Supreme Court explained in *Premo, supra*:

The plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases not only where witnesses and evidence have disappeared, but also in cases where witnesses and evidence were not presented in the first place.

*Id*., 131 S. Ct. at 745-46.

Petitioner's valid guilty pleas waived his right to challenge the sufficiency of the State's case against him or counsel's conduct in failing to "test the State's case" by moving to dismiss the information on the grounds that the State could not establish a prima facie case of guilt. Petitioner is not entitled to federal habeas review of Ground Two.

    B.    Petitioner's Claim Fails Even if Reviewed De Novo

Notwithstanding the above analysis, petitioner's claim that counsel was ineffective for failing to move to dismiss the Amended Information fails for the reasons outlined in respondent's answer. (*See* Doc. 15, pp. 29-33). To summarize,

under Florida law motions to dismiss an information are governed by Florida Rule of Criminal Procedure 3.190. The specific provision to which petitioner refers is Rule 3.190(c)(4), which allows dismissal if "[t]here are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt against the defendant." The defendant bears the burden "to specifically allege and swear to the undisputed facts . . . and to demonstrate that no *prima facie* case exists upon the facts set forth in detail in the motion." *State v. Kalogeropolous*, 758 So. 2d 110, 111 (Fla. 2000). Based on the state court record, including the depositions of the investigators, not only would petitioner's version of the material facts have been disputed, but the State also would have presented additional facts establishing a prima facie case of trafficking regardless of whether there was sufficient proof of petitioner's actual or constructive possession of the methamphetamine. A more detailed discussion of those relevant facts and alternative theories is provided in respondent's answer (doc. 15, pp. 30-33), which the undersigned adopts and incorporates by reference into this Report and Recommendation. Because petitioner's proposed motion would not have been successful, petitioner cannot establish deficient performance or prejudice under *Strickland* and *Hill*.

Ground Three     "Counsel was ineffective when (s)he failed to challenge the state's claim that contraband seized by law enforcement officers contained "28 grams or more of methamphetamine," an essential element of the information." (Doc. 1, p. 8).

     This claim is similar to Ground Two above, except here petitioner faults counsel for failing to move to dismiss the information on the grounds that the State could not prove the requisite quantity (weight) of methamphetamine to charge him with a trafficking amount. Specifically, petitioner alleges that the weight of methamphetamine charged in the Amended Information was based on the weight of

a mixture discovered in a cooking vessel which was an "unusable and unsaleable toxic waste mixture" (doc. 1, p. 9) that was the "waste byproduct of an amphetamine cook". (Doc. 1, p. 8). Petitioner faults counsel for failing to have the substance tested and weighed for accuracy, and for failing to "challenge the state's case by filing a motion to either dismiss or quash the information against the defendant." (*Id.*, p. 9).

Respondent concedes that petitioner presented this claim as "Ground 3" of his amended Rule 3.850 motion (doc. 15, p. 34), but argues that petitioner is not entitled to federal habeas relief because the state court rejected petitioner's claim on the independent and adequate state procedural ground that in Florida, attacks on the sufficiency of the evidence are not cognizable through collateral attack and are procedurally barred from review in a Rule 3.850 proceeding (*id.*, p. 35). Respondent argues that the state court's imposition of a procedural bar renders petitioner's claim procedurally defaulted for purposes of federal habeas. Respondent argues in the alternative that petitioner's valid guilty plea forecloses federal collateral review of his claim because petitioner waived this and other nonjurisdictional challenges to the constitutionality of his plea. (*Id.*, pp. 36-37). Respondent argues in the alternative that even considering petitioner's claim on the merits, petitioner is entitled to no relief. (*Id.*, pp. 37-40).

The state court addressed petitioner's claim as follows:

> In Ground Three, the Defendant alleges that trial counsel was ineffective for [failing to] challeng[e] the sate's claim that the Defendant was trafficking more than 28 grams of methamphetamine, as they allegedly based the weight on a "mixture" containing unusable waste byproduct. The Defendant states that he had a right to have an expert do an independent analysis of the seized drugs, and that counsel failed to conduct an investigation into this matter. Again, the Defendant is

improperly attacking his counsel's failure to investigate the sufficiency of the evidence that would have been produced at trial. See *Stano v. State*, 520 So. 2d 278, 280 (Fla. 1988) ("By insisting on pleading guilty . . . [the defendant] rendered any further investigation pointless."); *see also Clift*, 43 So. 3d at 780 ("it is frivolous for the Appellant to attack the sufficiency of the evidence of his conviction in a rule 3.850 motion."). Thus, Ground Three is without merit.

(Ex. I, p. 43).

The court need not reach the procedural default issue, because petitioner's claim provides no basis for federal habeas relief.

A.    Petitioner's Valid Guilty Plea Forecloses Federal Habeas Review

Federal habeas relief should be denied on Ground Three for the same reasons discussed in Grounds One and Two above – this claim involves alleged error that occurred prior to the entry of petitioner's guilty plea and does not implicate counsel's plea advice or the knowing or voluntary character of petitioner's plea. Petitioner's valid guilty plea waived his right to challenge the sufficiency of the State's case against him or counsel's conduct in failing to "test the State's case" by moving to dismiss the information on the grounds that the State could not establish a prima facie case of guilt. Petitioner is not entitled to federal habeas review of Ground Three.

B.    Petitioner's Claim Fails Even if Reviewed De Novo

Notwithstanding the above analysis, petitioner's claim that counsel was ineffective for failing to move to dismiss the information fails for the reasons outlined in respondent's answer. (*See* Doc. 15, pp. 37-40). To summarize, petitioner contends counsel should have moved to dismiss the Amended Information because the State allegedly relied on the weight of a "mixture" of methamphetamine and unusable waste byproduct to charge him with a trafficking amount of methamphetamine, rather than first extracting any usable amount of methamphetamine from the mixture "to

ascertain the illegal 'net weight," which is the chargeable weight." (Doc. 1, pp. 8-9).

As used in Fla. Stat. 893, the statute under which petitioner was charged, the term

"mixture" is defined to mean "any physical combination of two or more substances."

Fla. Stat. § 893.02(15). Thus, petitioner's contention is directly contrary to Florida

law defining a "mixture". *See* Fla. Stat. §§ 893.02(15); 893.135(1)(f)1.b.; *see also*

*State v. Yu*, 400 So. 2d 762, 764-65 (Fla. 1981) (recognizing that Section 893

penalizes the possession of certain amounts of mixtures containing particular

controlled substances without regard to the percentage (or weight) of the particular

controlled substance in the mixture). As petitioner's proposed motion to dismiss the

Amended Information under Florida Rules of Criminal Procedure 3.190 would have

failed, petitioner cannot establish deficient performance or prejudice under *Strickland*

and *Hill*.

| | |
|---|---|
| Ground Four | "The Defendant alleges that had counsel not been ineffective, there is a reasonable probability that he would not have entered a plea to a crime he did not commit but would have proceeded straight to trial. That there was a viable defense and that counsels [sic] advice to plea was in error." (Doc. 1, p. 10). |

Petitioner's final claim presents a "cumulative error" type claim concerning

counsel's failure to file the above-discussed motions to suppress and to dismiss the

information, and additionally alleges the following:

> Counsel failed to recognize and inform the court that the
> defendant has been diagnosed as bi-polar, has attention deficit disorder,
> high blood pressure and was under the influence of psychotropic
> medications as directed by a physician and was given to him by the
> Department of Corrections. Defendant was under the influence of the
> psychotropic drugs at plea.

> Counsel failed to depose potential witnesses, failed to file pretrial
> motions or conduct legal research, failed to have the evidence analyzed.

Counsel committed malpractice and negligence. Counsels [sic] representation left the defendant with counsel in name only.

Had counsel done a thorough investigation and reviewed the evidence he would have found errors in the investigative process, the fact that Defendant was not found to be in possession of any drugs, that someone other than the defendant was in control of the shed, and that the person had continuous access for weeks prior to and on that day, that physical evidence supports this conclusion. A claim of ineffective assistance of counsel is extraordinary and in this case the facts clearly warrant it. The evidence and facts contained herein conclusively show that had counsel been effective there would have in all likelihood been a successful outcome or an acquittal during trial.

(Doc. 1, p. 10).

Respondent concedes that petitioner presented this claim as "Ground 4" of his amended Rule 3.850 motion (doc. 15, p. 41), but argues that petitioner is not entitled to federal habeas relief because the state court rejected petitioner's claim on an independent and adequate state procedural ground (*id.*, pp. 41-42). Respondent argues that the state court's imposition of a procedural bar renders petitioner's claim procedurally defaulted for purposes of federal habeas. Respondent argues in the alternative that petitioner's valid guilty plea forecloses federal collateral review of his claim because petitioner waived this and all other nonjurisdictional challenges to the constitutionality of his plea. (*Id.*, pp. 43-44). Respondent argues in the alternative that even considering petitioner's claim on the merits, petitioner is entitled to no relief. (*Id.*, pp. 44-46).

The state court addressed petitioner's claim as follows:

In Ground four, the Defendant alleges that he received ineffective assistance of counsel for failure to adequately prepare and investigate the Defendant's case and .[sic]. The Defendant claims that trial counsel hastily advised him to agree to the plea offer by the State without taking

the time to investigate the evidence in the case. He states that counsel was "unaware of and failed to explore all possible, or probable defenses," and failed to depose witnesses, conduct legal research, have evidence analyzed or file any pretrial motions. The Defendant does not provide any specific support for his contentions, and instead rehashes many of the above arguments attacking the sufficiency of the evidence. Furthermore, the Defendant is not entitled to attack his counsel's failure to investigate and present arguments to a jury, as he decided to plead no contest to the charges. *See Clift*, 43 So. 3d at 779 ("Where a defendant enters a plea and swears that he is satisfied with his counsel's advice, he may not later attack counsel's effectiveness for failure to investigate or defend the charge."). Finally, the Defendant's assertion that he was under the influence of psychotropic medication when he entered the plea is refuted by the record. (*See* Plea and Sentencing Transcripts at 5.) Accordingly, Ground Four is denied.

(Ex. I, p. 43).

The court need not reach the procedural default issue, because petitioner's claim provides no basis for federal habeas relief.

> A. Petitioner's Valid Guilty Plea Forecloses Federal Habeas Review of His Claims Concerning Counsel's Failure to Investigate, File Pretrial Motions and Argue Petitioner's Proposed Issues to a Jury

Federal habeas relief should be denied on Ground Four for the same reasons discussed in Grounds One through Three above – petitioner's challenges to his conviction on the grounds that counsel failed to investigate and defend the State's case were waived by entry of his valid guilty plea. Petitioner's allegations do not implicate counsel's plea advice or undermine the intelligent and voluntary character of petitioner's plea. Petitioner's valid guilty plea forecloses federal habeas review of Ground Four insofar as petitioner's challenges counsel's failure to prepare and present a defense. *See Tollett*, 411 U.S. at 266-67.

B.     Review of Petitioner's Claim That He Was Under the Influence of Psychotropic Medications at the Time He Entered His Pleas

Regarding petitioner's allegation that defense counsel was ineffective for "fail[ing] to recognize and inform the court" of petitioner's mental condition and use of psychotropic medications, the state court denied relief on the basis that petitioner's allegations were conclusively refuted by the transcript of petitioner's plea colloquy.

i.  Clearly Established Federal Law

The clearly established Federal law governing challenges to guilty pleas on grounds of ineffective assistance of counsel is set forth above.  In addition, "[t]he due process clause prohibits the trial or guilty plea conviction of a person who is mentally incompetent." *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).  The standard for determining competency to plead is the same standard applied to determine competency to stand trial, *i.e.* whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of understanding-and whether he has a rational as well as factual understanding of the proceedings against him." *Id*.  "Treatment with anti-psychotic drugs does not per se render a defendant incompetent to stand trial." *Sheley v. Singletary*, 955 F.2d 1434, 1438 (11th Cir. 1992) (*citing Price v. Wainwright*, 759 F.2d 1549, 1555 (11th Cir. 1985)). The clearly established federal law on a defendant's competency to stand trial is set forth in *Drope v. Missouri*, 420 U.S. 162, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975); *Pate v. Robinson*, 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966), and *Dusky v. United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960).  *Dusky* provides that the standard for mental competency to stand trial is "whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual

understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. at 402.

> The burden on the petitioner seeking federal habeas relief on the grounds of incompetency is heavy. The standard is: "[c]ourts in habeas corpus proceedings should not consider claims of mental incompetence to stand trial where the facts are not sufficient to positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to the mental capacity of the petitioner." *Reese v. Wainwright*, 600 F.2d 1085, 1091 (5th Cir. 1979) (*citing Bruce v. Estelle*, 483 F.2d 1031, 1043 (5th Cir. 1973), *subsequent opinion*, 536 F.2d 1051 (5th Cir. 1976)), *cert. denied*, 444 U.S. 983, 100 S. Ct. 487, 62 L. Ed. 2d 410 (1979).

*Sheley*, 955 F.2d at 1438.[5] Under *Drope* and *Pate*, if a defendant fails to request that the trial court conduct an inquiry into his competency to stand trial, a trial court violates the Due Process Clause by failing to conduct such an inquiry if the objective facts known to the court at the time create a bona fide doubt as to mental competency. *Drope*, 420 U.S. at 180; *Pate*, 383 U.S. at 385; *Medina v. Singletary*, 59 F.3d 1095 (11th Cir. 1995).

    ii.    Federal Review of State Court Decision

The state court's written order denying relief discussed the two-pronged test for ineffective assistance of counsel claims articulated in *Strickland v. Washington*.

---

[5]In *Sheley*, the court rejected the petitioner's claim that his ingestion of psychotropic drugs before he entered his guilty plea in state court rendered the plea involuntary. *Id.*, 955 F.2d at 1437-39. "[A] '[petitioner] must present evidence demonstrating that the dosage [of anti-psychotic medication] given him affected him sufficiently adversely as to raise a doubt of his ability to consult with his lawyer and to have a rational understanding of the proceedings against him.'" *Id.*, 955 F.2d at 1438-39 (*quoting Fallada v. Dugger*, 819 F.2d 1564, 1569 (11th Cir. 1987)). The court found that Sheley failed to present sufficient evidence to support his claim that his "medication caused him to be confused and to lack understanding of the proceedings under the legal standard of competence." *Id.*, 955 F.2d at 1439.

(Ex. I).  The state court's rejection of petitioner's claim was not "contrary to" clearly established Federal law, because the state court applied the appropriate standard. There is no Supreme Court case with materially indistinguishable facts dictating a different outcome than that reached by the state court.

The state court's rejection of petitioner's claim was not based on an unreasonable application of clearly established Federal law or on an unreasonable determination of the facts.  Petitioner's written plea agreement contained the following statement:  "I am in full command of my normal faculties and I am not under the influence of any sedatives, drugs, narcotis, or intoxicating beverages which would render me incapable of knowingly, intelligently or voluntarily entering this plea today.  I am not now suffering from any mental illness.  I have a clear understandinng of the proceedings today." (Ex. C). Petitioner signed the written plea agreement after asserting that "all statements made by me are true, accurate and correct."  (*Id*.).  Petitioner reconfirmed the truth of this statement under oath during the plea colloquy.  Before accepting petitioner's plea, the trial judge asked petitioner a series of questions, including:  "Are you under the influence of any  medication or other substance that could impact or interfere with your ability to understand what's going on?"  (Ex. D).  Petitioner answered "No, sir."  (*Id*.).  The trial court observed petitioner's demeanor, coherence and ability to communicate with the court and his attorney during the plea colloquy.  Nothing in the transcript of the plea proceeding indicates that petitioner lacked a sufficient understanding of the proceedings.

Petitioner cannot now go behind his own sworn testimony at the plea hearing and challenge his judgment of conviction on the ground that he was under the influence of a mental condition and medications that rendered him incapable of entering a knowing plea.

> [T]he representations of the defendant, as well as any findings by the
> judge accepting the plea, constitute a formidable barrier in any
> subsequent collateral proceedings. Solemn declarations in open court
> carry a strong presumption of verity. The subsequent presentation of
> conclusory allegations unsupported by specifics is subject to summary
> dismissal, as are contentions that in the face of the record are wholly
> incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977);

*United States v. McCord*, 618 F.2d 389, 393 (5th Cir. 1980) ("[A] defendant

ordinarily will not be permitted to refute testimony given under oath at a plea or

sentencing hearing.").

Petitioner's bare allegation that he was under the influence of psychotropic

medication when he entered his plea is insufficient to sustain his claim of an

involuntary plea and ineffective assistance of counsel. Petitioner has failed to cite

any objective facts that would positively, unequivocally and clearly generate a

legitimate doubt as to his competency during the plea hearing. *Sheley v. Singletary*,

955 F.2d at 1438. Further, he has failed to show that any medication or mental

illness affected him at the plea proceeding to the point that he could not understand

the proceedings or effectively consult with counsel. *Dusky v. United States*, 362 U.S.

at 402.

Likewise, petitioner has failed to show that counsel saw or knew something on

the day of the plea that would cause her concern about petitioner's competency or

ability to understand the events transpiring. Therefore, petitioner has failed to show

deficient performance by counsel.

Petitioner has failed to meet his burden of proving that the state court's

decision was contrary to clearly established Supreme Court law, was based on an

unreasonable application of clearly established Supreme Court law, or was based on

an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1), (2). Ground Four warrants no federal habeas relief.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The Clerk shall change the docket to reflect that Michael D. Crews has been substituted as the respondent in this cause.

And it is respectfully RECOMMENDED:

1. That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Donald Lewis Evans* in the Circuit Court for Bay County, Florida, Case No. 09-CF-2149 be DENIED, and the Clerk be directed to close the file.

2. That a certificate of appealability be DENIED.

At Pensacola, Florida this 6th day of December, 2013.


/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**



NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).